UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-cv-20677-ALTMAN/Reid

**GUY LEWIS**, *et al.*,

    *Plaintiffs*,

v.

**ALLIED WORLD SPECIALTY INSURANCE CO.**,

    *Defendant*.

_____/

## ORDER GRANTING MOTION FOR RECONSIDERATION

The Plaintiffs—Guy Lewis and Michael Tein—sued Jose M. Herrera and the Herrera Law Firm, P.A., in state court, asserting claims of civil conspiracy, aiding and abetting malicious prosecution, and abuse of process. After some litigation, the Plaintiffs settled their claims with Herrera for $22,097,987. As part of that settlement, the Plaintiffs agreed never to collect from Herrera, who then assigned to the Plaintiffs his right to sue his insurer, Allied World Specialty Insurance Company (our Defendant). With that *Coblentz*[1] agreement in hand, the Plaintiffs filed this lawsuit, advancing two claims: a breach-of-contract claim (Count I) and a bad-faith claim (Count II)—both stemming from

---

[1] These agreements get their name from the Fifth Circuit's decision in *Coblentz v. American Surety Co. of New York*, 416 F.2d 1059 (5th Cir. 1969). *See Travelers Indem. Co. of Conn. v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1260 (11th Cir. 2021) ("When an insurance company wrongfully refuses to defend its insured, Florida law lets the insured settle the case himself in exchange for the plaintiff's promise to collect the settlement only from the insurance company. That type of settlement is called a '*Coblentz* agreement,' named for the Fifth Circuit case that first approved one.") "Since the *Coblentz* decision, courts in the Eleventh Circuit and Florida have set out three requirements that a party seeking to recover the amount awarded in a consent judgment pursuant to a *Coblentz* agreement must prove: (1) that the insurer wrongfully refused to defend; (2) that the insurer had an obligation to cover the loss or indemnify under the policy; and (3) that the settlement was objectively reasonable and made in good faith." *Petro v. Travelers Cas. & Sur. Co. of Am.*, 54 F. Supp. 3d 1295, 1302 (N.D. Fla. 2014) (Rodgers, C.J.).

the Defendant's alleged refusal (1) to defend Herrera in the underlying lawsuit and (2) to offer the Plaintiffs the policy limits ($1,000,000). *See* Complaint [ECF No. 1] at 5–7. The Defendant promptly moved to dismiss Count II, arguing that, under Florida law, "a cause of action for bad faith is not ripe as there has been no determination of coverage or that the Coblentz Agreement is enforceable." Defendant's Motion to Dismiss Complaint Count II ("MTD") [ECF No. 9] at 5. As the insurer explained in its MTD: "Because there has been no final determination as to coverage, liability, or damages, the bad faith count is premature, and should be dismissed for failing to state a cause of action on which relief can be granted." *Id.* at 1. Citing two inapposite cases from Florida's District Courts of Appeal, the then-presiding Judge denied the MTD.[2] *See* Order Denying MTD [ECF No. 31].

A couple weeks later, the Defendant filed this Motion for Reconsideration ("Motion") [ECF No. 32]. In that Motion, the Defendant asks us to reconsider the prior Judge's Order Denying MTD because "fundamental and established principles relating to the enforceability of *Coblentz* agreements, and an insurer's potential liability for bad faith after a *Coblentz* agreement has been entered, have been conflated." *Id.* at 1. According to the Defendant, "(1) coverage is not an element of a third party bad faith claim in the context of enforcing a *Coblentz* agreement, and (2) a bad faith claim is ripe only after there is a final determination of liability and damages against the insurer, not simply against the insured in the underlying action." *Id.* at 4. As the Defendant correctly explains, the enforceability of a *Coblentz* agreement "proceeds in two separate parts." *Id.* at 1. *First*, "the court determines the validity and enforceability of the *Coblentz* agreement." *Ibid.* At this first step, the plaintiff must prove: "(1) coverage under the insurance policy, (2) that the insurer wrongfully refused to defend its insured, and (3) that the settlement was objectively reasonable and made in good faith." *Id.* at 5. *Second*, and only after "all

---

[2] This case was originally assigned to Judge Ursula Ungaro of our Court. In June of 2021, however, Judge Ungaro retired, and the case was reassigned to us. *See* Notice of Reassigned Case [ECF No. 49].

three of these elements have been finally decided, through final resolution in the appellate courts," *id.* at 2, the plaintiff can allege "that Allied World acted in bad faith" and seek "damages in excess of the policy limit," *id.* at 4.

In their Response to the Motion for Reconsideration ("Response") [ECF No. 33], the Plaintiffs never *really* challenge the Defendant's positions (or citations) directly. They, instead, cite the standard for reconsideration under FED. R. CIV. P. 59(e) and quibble with whether—and to what extent—the Defendant has ignored that standard. *See generally* Response. On December 5, 2022, we held a hearing on the Motion, at which the parties presented their oral arguments. *See* Paperless Minute Entry for Proceedings Held Before Judge Roy K. Altman [ECF No. 65]. Having now carefully reviewed the parties' briefs—and for the reasons outlined below—we **GRANT** the Motion and **DISMISS** Count II of the Complaint *without prejudice*.

## THE STANDARD OF REVIEW

In their Response, the Plaintiffs contend that, "[w]hen, as here, a motion for reconsideration is served within twenty-eight days of the entry of the order at issue, [Rule 59(e)] applies." Response at 2. "Rule 59(e) does not set forth specific criteria, but courts have delineated three grounds justifying reconsideration under the rule: '(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Ibid.* According to the Plaintiffs, "[n]one of these criteria apply here." *Ibid.*

But, as the Defendant rightly notes, our power to reconsider the MTD is "not derived from Federal Rule Civil Procedure 59, which applies to final judgments." Reply [ECF No. 37] at 2. Since Judge Ungaro entered no judgment as to Count II—indeed, since no judgment has been entered in this case at all—Rule 59 doesn't apply here, which is reason enough to reject the Plaintiffs' principal contention. *See Ryan v. Allstate Ins. Co.*, 2020 WL 7353898, at *2 (S.D. Fla. Dec. 15, 2020) (Altman, J.) ("As a preliminary matter, the Plaintiffs' wholesale reliance on the wrong legal standard—indeed, on

3

the wrong jurisdiction's legal regime—provides sufficient grounds, standing alone, to deny the Motion." (first citing *Aldar Tobacco Grp. LLC v. Am. Cigarette Co., Inc.*, 2010 WL 11601994, at *1 (S.D. Fla. Dec. 29, 2010) (Jordan, J.) ("'[The plaintiff cites] seven cases, arguing that they show that, even where the motion lacks legal authority, a court should consider the motion on the merits. But those cases state the opposite."); and then citing *Belony v. Amtrust Bank*, 2011 WL 2297669, at *2 (S.D. Fla. June 8, 2011) (Marra, J.) ("Even if this were true, which depends on other factors Defendant does not address, Defendant's failure to cite *any* authority for this principle makes it difficult for the Court to rule in its favor. Defendant's deficient memorandum of law is itself a basis to deny its motion."))).

But here's the thing: The Plaintiffs would lose even if they had cited the right legal rule—which, in this case, appears to be Rule 54(b). *See* FED R. CIV. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). "Motions for reconsideration, whether considered under Rule 54(b) (like this one), Rule 59(b), or Rule 60(b), are generally all evaluated under the same standard." *Jones v. City of Palm Beach Gardens*, 2022 WL 16745733, at *2 (S.D. Fla. Nov. 7, 2022) (Scola, J.) (citing *Region 8 Forest Serv. v. Alcock*, 993 F.2d 800, 805–06 (11th Cir. 1993) ("We see no reason to apply a different standard when the party seeks reconsideration of a non-final order.")). To prevail under Rule 60(b), the movant must show: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or misconduct by an opposing party; (4) [that] the judgment is void; (5) [that] the judgment has been satisfied, released or discharged; [that] it is based on an earlier judgment that has been reversed or vacated; or [that] applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." FED. R. CIV. P. 60(b).

"In addressing a motion to reconsider a prior decision, two opposing policies must be balanced: on the one hand, the desirability of finality, and on the other, the public interest in reaching the right result." *Jones*, 2022 WL 16745733, at *2 (citing *Civ. Aero. Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 321 (1961)). "To balance these competing principles, courts generally permit reconsideration where there is newly discovered evidence, a manifest error of law or fact, or where justice so requires." *Ibid.* (first citing *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999); and then citing *Vila v. Padron*, 2005 WL 6104075, at *1 (S.D. Fla. Mar. 31, 2005) (Altonaga, J.)). Ultimately, we conclude that, whatever the standard, the Defendant has shown that reconsideration is necessary to prevent "a manifest error of law or fact[.]" *Ibid.*

## ANALYSIS

The parties agree that Florida law governs this case.[3] And Florida law is clear that, in the context of a *first*-party insurance claim, "[a]n insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue." *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991). As the Florida Supreme Court has explained:

> If an uninsured motorist is not liable to the insured for damages arising from an accident, then the insurer has not acted in bad faith in refusing to settle the claim. Thus, an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue. It follows that an insured's claim against an uninsured motorist carrier for failing to settle the claim in good faith does not accrue before the conclusion of the underlying litigation for the contractual uninsured motorist insurance benefits. Absent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle.

---

[3] *See* MTD (relying only on Florida law); Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Complaint Count II ("MTD Response") [ECF No. 16] (same); Defendant's Reply to Response in Opposition to Motion to Dismiss Count II ("MTD Reply") [ECF No. 18] (same); *see also* Motion for Reconsideration (citing only Florida law); Response (same); Reply (same).

*Ibid.*; *see also Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000) ("We continue to hold in accord with *Blanchard* that bringing a cause of action in court for violation of section 624.155(1)(b) [bad faith] is premature until there is a determination of liability and extent of damages owed on the first-party insurance contract." (cleaned up)).

The Plaintiffs don't contest any of this. Instead, they insist that Florida courts have carved out an exception to this well-established rule for *third*-party claims—*i.e.*, for situations like the one we have here, where the insurer is sued, *not* by its insured, but by the party who's settled with the insured. In the Plaintiffs' view, then, their "bad faith claim is not premature because it is a third-party bad faith claim" based on the Defendant's failure to defend its insured (Herrera). MTD Response at 3 (cleaned up). According to the Plaintiffs, "third-party bad faith cases involving an insurer's failure to defend" have treated "proof of coverage" as an element—and "not as a precondition"—to the filing of the bad-faith claim. *Id.* at 4. The Plaintiffs also maintain that "the[ir] *Coblentz* agreement is the functional equivalent of a judgment in excess of the policy." *Ibid.*

In her Order Denying the MTD, the prior Judge agreed with the Defendant that a *first*-party bad-faith claim cannot proceed until questions of coverage have been resolved. *See* Order Denying MTD at 6–7 ("It is well settled that a statutory first-party bad faith action is premature until two conditions have been satisfied: (1) the insurer raises no defense which would defeat coverage (an issue for the judicial process rather than the appraisal process), or any such defense has been adjudicated adversely to the insurer; and, (2) the actual extent of the insured's loss must have been determined." (cleaned up)). But she sided with the Plaintiffs on the all-important question of whether Florida law has cut out an exception to this principle for *third*-party claims. *See id.* at 5–6 ("While coverage may be a condition precedent to bring a statutory first-party bad faith claim, it is not a condition precedent to bringing a common law third-party bad faith claim."). For three reasons, we think the prior Judge was plainly wrong to say so.

6

*First*, the Florida Supreme Court has repeatedly made clear that "first-party bad faith claims . . . should be treated in the same manner as third-party bad faith claims." *Fridman v. Safeco Ins. Co. of Ill.*, 185 So. 3d 1214, 1221 (Fla. 2016); *see also Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121, 1126 (Fla. 2005) ("[W]ith the enactment of section 624.155 in 1982 . . . the Florida Legislature resolved this inequity and recognized the power disparity as it created a statutory first-party bad faith cause of action for first-party insureds, thereby eliminating the disparity in the treatment of insureds aggrieved by an act of bad faith on the part of their insurers *regardless of the nature of the type of claim presented.*" (emphasis added)). And with good reason:

> As this Court has recognized, "previous actions of this Court limiting the relief afforded under section 624.155 based upon distinctions between first- and third-party claims have been rebuked by the Legislature" by the 1992 enactment. Indeed, section 624.155 itself does not distinguish between first- and third-party bad faith actions and contains the same language that has been used in the third-party bad faith context. *Consequently, first-party bad faith claims under section 624.155 should be treated in the same manner as third-party bad faith claims.* Importantly, in both first- and third-party bad faith actions, an element of damages includes any amount in excess of the policy limits.

*Fridman*, 185 So. 3d at 1221 (emphasis added & cleaned up) (quoting *Ruiz*, 899 So. 2d at 1128 n.2).

And the DCAs have followed suit. Take, for instance, *GEICO General Ins. Co. v. Harvey*, 109 So. 3d 236 (Fla. 4th DCA 2013), where an insurer appealed from the trial court's denial of its motion to dismiss. Reversing the trial court, Judge Gross (writing for the Fourth DCA) explained:

> An insurance bad faith action does not accrue until the issue of coverage under the policy has been determined. *See Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991); *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000) (clarifying *Blanchard* and continuing to hold that a bad faith claim is premature and should be dismissed where the issues of liability and the extent of coverage under the policy are unresolved); *Progressive Select Ins. Co. v. Shockley*, 951 So. 2d 20 (Fla. 4th DCA 2007) (granting certiorari from an order denying a motion to dismiss a first party bad faith claim and granting relief because the issue of damages had not yet been determined in the coverage action). Thus, the bad faith cause of action did not accrue until well after the tort cause of action and did not arise from the same occurrence.

7

> The Florida Supreme Court has repeatedly recognized that a "'claim arising from bad faith is grounded upon the legal duty to act in good faith, and is thus separate and independent of the claim arising from the contractual obligation to perform.'" *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1235 (Fla. 2006) (quoting *Blanchard*, 575 So. 2d at 1291). Similarly, a defendant's bad faith claim against his insurer is distinct, separate and independent from the plaintiff's tort claim against the defendant.

*Id.* at 239–40. "[T]he trial court" had thus "departed from the essential requirements of law by denying the insurer's motion to dismiss," because a "third party bad faith claim against an insurer for failure to settle *may not be brought in the underlying tort action but must be raised in a separate cause of action.*" *Id.* at 240 (emphasis added). Since Florida courts have expressly and unanimously held that first- and third-party bad-faith claims should be treated the same, we're not free to treat them differently. *See, e.g., Cadle v. GEICO Gen. Ins. Co.*, 838 F.3d 1113, 1121 (11th Cir. 2016) ("In diversity cases, we apply the substantive law of the forum state." (citing *Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009))); *Venn v. St. Paul Fire & Marine Ins. Co.*, 99 F.3d 1058, 1063 (11th Cir. 1996) ("[T]he district court is *required* to follow the Florida Supreme Court's decision on an issue of Florida law[.]").

*Second*, in the world of *Coblentz* agreements, there's really no reason to create an exception for *third*-party claims. The Plaintiffs, after all, may only sue the Defendant by virtue of an assignment they received from the (first-party) insured. Through that assignment, the Plaintiffs now "stand[ ] in the shoes of the insured"—and are thus suing the Defendant under the guise of the insured himself. *Fridman*, 185 So. 3d at 1220 n.2; *see also Bos. Old Colony Ins. Co. v. Gutierrez*, 325 So. 2d 416, 417 (Fla. 4th DCA 1976) ("As a third party beneficiary of the insurance policy, Gutierrez [the plaintiff] stands in the same posture as that of Brown, the insured."); *United Servs. Auto. Ass'n v. Jennings*, 707 So. 2d 384, 385 (Fla. 1st DCA 1998) ("Generally, the third party in a third party bad-faith action stands in the shoes of the insured[.]"), *aff'd* 731 So. 2d 1258 (Fla. 1999); *Ilias v. USAA Gen. Indem. Co.*, 545 F. Supp. 3d 1296, 1301 (M.D. Fla. June 24, 2021) (Jung, J.) ("Florida case law also allows a third-party claimant

. . . to step into the shoes of the insured and sue an insurer directly for its bad faith in failing to settle a claim on behalf of its insured."). We usually don't carve out exceptions to well-worn rules without a good reason for doing so.

*Third*, no Florida court has *ever* recognized a third-party exception to the rule the Florida Supreme Court first enunciated in *Blanchard*—the rule it has since reiterated in *Ruiz, Vest*, and *Fridman*. In suggesting that Florida law *does* countenance such an exception, the prior Judge—and our Plaintiffs—relied on two DCA cases: *Independent Fire Ins. Co. v. Paulekas*, 633 So. 2d 1111(Fla. 3d DCA 1994); and *Fla. Farm Bureau Mut. Ins. Co. v. Rice*, 393 So. 2d 552 (Fla. 1st DCA 1980). But, as we're about to see, neither case even hints at any such exception.

The plaintiff in *Paulekas* "was piloting his boat in the Florida Keys, when he was approached by a boat piloted by Clifford Richardson." *Paulekas*, 633 So. 2d at 1111. Unfortunately, "Richardson failed to turn his boat to the right . . . causing the two vessels to collide." *Ibid*. Paulekas and his wife "sued Richardson and the owner of the boat, Gerald Severinghaus," who "had a homeowner's policy with Independent." *Ibid*. While Independent "initially represented" Severinghaus and Richardson, it "denied that the Severinghaus boat was covered under the policy, and subsequently filed a declaratory judgment action against Severinghaus and Richardson." *Id.* at 1112. Finding "that there was no coverage under Independent's policy," the trial court "granted Independent's motions for summary judgment" in the declaratory action, and (as a result) "Independent withdrew its defense of Richardson." *Ibid*. Richardson—who "feared that he was facing a large adverse judgment"—"agreed to judgment in favor of the Paulekases for $650,000" and "assigned any claims he had against Independent for policy benefits or bad faith." *Ibid*.

With this assignment in hand, the Paulekas Plaintiffs turned around and sued Independent, "seeking to enforce the consent judgment *and asserting a bad faith claim*." *Ibid*. (emphasis added). Put a pin in this last (highlighted) phrase because, as it turns out, it's the only part of this case our Plaintiffs

9

(and the prior Judge) relied on. As the litigation proceeded, the Paulekases filed a motion for summary judgment, arguing that "Independent could not avoid coverage, citing to Florida's anti-technical statute, Section 627.409(2), Florida Statutes (1987)." *Ibid.* "The trial court granted the Paulekases' motion for summary judgment, concluding that there was coverage for the accident," and the case went to trial on the "issue of the enforceability of the consent judgment against independent." *Ibid.* "[T]he jury returned a verdict in favor of the Paulekases, finding that the consent judgment was reasonable and the trial court entered judgment against Independent for $650,000, plus accrued interest." *Ibid.*

On appeal, the Third DCA affirmed the trial court's finding that "the consent judgment [was] valid." *Id.* at 1113. But "it was error for the trial court to [conclude], as a matter of law, that Independent was obligated to provide coverage for the accident in question" because Florida's anti-technical statute "does not apply to homeowner's insurance," and because there was a "material question of fact [ ] as to the date on which the boat was purchased by its insured[.]" *Ibid.* "Naturally," the court added, "that judgment will only become relevant, as to Independent, if, and when, the trial court determines that Independent is obligated to provide coverage for the accident in question." *Id.* at 1114.

As this recitation makes plain, despite the DCA's passing reference to a "bad faith claim," *id.* at 1112, the appellate court *never* had occasion to decide whether the plaintiffs' bad-faith claim should be conjoined with the breach-of-contract claim, because the bad-faith claim was *never presented to the jury*—and thus was never discussed on appeal. As we noted during the hearing we held on this issue, the verdict form the jury signed at the end of the *Paulekas* trial makes clear that the jurors considered one—and only one—question: "Was the amount of Final Consent Judgement entered February 22, 1991 reasonable?" Verdict Form, *Indep. Fire Ins. Co. v. Paulekas et al.*, 91-20007 (Fla. 16th Cir. Ct. Dec.

10

23, 1992).[4] Since the jury never addressed the plaintiffs' bad-faith claim, the Third DCA's opinion—which didn't consider or resolve any part of that claim—cannot be read as creating an exception for that kind of claim.

The First DCA's opinion in *Rice* is no more helpful. In that case, Gene Rice "recovered a consent judgment of $75,000 (plus costs) against Wayne Eichholz, driver of the car which struck the motorcycle ridden by Rice." *Rice*, 393 So. 2d at 553. Eichholz's insurer, Farm Bureau, "denied coverage for the accident and refused to defend Eichholz in the suit." *Ibid.* "The trial court appointed an attorney to represent Eichholz," and "judgment was subsequently entered based on the consent agreement." *Ibid.* With his assignment complete, Rice sued Farm Bureau "for the full amount of the judgment obtained." *Ibid.* After a bench trial, the court entered judgment against Farm Bureau "on the full amount of the personal injury judgment plus interest and costs." *Ibid.* Farm Bureau appealed, arguing that the trial court erred by "(1) holding that there was coverage under the insurance policy; (2) finding Farm Bureau was guilty of bad faith; and (3) approving the consent judgment entered in the personal injury action." *Id.* at 554. Affirming the trial court, the First DCA had only this to say about the bad-faith claim: "Assuming that bad faith is required for recovery over policy limits in a case such as this where there is a refusal to defend, the trial court's finding of bad faith is supported by the evidence." *Id.* at 555 (cleaned up).

Our Plaintiffs (and the prior Judge) glommed on to the First DCA's implicit willingness to resolve the coverage question *together with* the merits of Rice's bad-faith claim. *See* MTD Response at 4 ("The trial court [in *Rice*] determined that there was indeed coverage under the policy, that the insurer was guilty of bad faith, and that the consent judgment was reasonable *all in the same action*." (emphasis in original)); Order Denying MTD at 6 ("The trial court [in *Rice*] determined that there was coverage under the policy, that the insurer was guilty of bad faith, and that the consent judgment was reasonable,

---

[4] We've attached that verdict form as Exhibit 1 to this Opinion.

all in the same action."). But the parties in *Rice* never asked the court to bifurcate the bad-faith claim from the rest of the case, so the First DCA never had occasion to consider—let alone to create—a third-party exception to the first-party rule. As the U.S. Supreme Court has repeatedly reminded us, "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)).

Given everything we've said thus far, it's probably unsurprising that just about every *other* federal court in Florida to have passed on this question has, consistent with our Defendant's position here, dismissed (or abated) the bad-faith claim pending resolution of the plaintiff's breach-of-contract action. *See, e.g.*, *Choi v. Ace Am. Ins. Co.*, 2022 WL 1199645, at *2 (S.D. Fla. Feb. 17, 2022) (Martinez, J.) ("The Court finds that the best course of action is to dismiss Count II without prejudice as the bad faith claim is premature at this juncture."); *Babilla v. Allstate Ins. Co.*, 2020 WL 6870610, at *1 (M.D. Fla. Aug. 27, 2020) (Dalton, J.) ("[U]nder Florida law bad faith claims will not ripen unless the movant prevails on the underlying coverage and liability issues[.]"); *ibid.* (holding that, because the bad-faith claim was "unripe, the Court must dismiss it without prejudice rather than abate or stay the claim"); *Terenzio v. LM Gen. Ins. Co.*, 423 F. Supp. 3d 1354, 1357 (S.D. Fla. 2019) (Cohn, J.) ("[I]t appears that a majority of federal district courts in Florida have ruled in favor of dismissal . . . . Therefore, the Court will dismiss without prejudice, rather than abate, Plaintiff's bad-faith claim." (cleaned up)); *Riascos-Mazo v. Certain Underwriters at Lloyd's of London*, 2018 WL 4258278, at *4 (S.D. Fla. Sept. 5, 2018) (Simonton, Mag. J) ("[T]o the extent that the Plaintiff's Count II claim for breach of fiduciary duty is properly characterized as a cause of action for bad faith, it [was] premature until there ha[d] been a determination of coverage under the Renewal Policy[.]"), *report and recommendation adopted*, 17-cv-23988, Final Order (S.D. Fla. Sept. 18, 2018) (King, J.), ECF No. 33; *id.* at *7 (dismissing the bad-faith claim because, "to have the *Coblentz* agreement enforced above the relevant policy limits, a separate

proceeding to establish bad faith [was] required for that purpose. Thus, the Plaintiff's allegations of bad faith are properly stayed or abated from this action."); *Merique v. Progressive Select Ins. Co.*, 2017 WL 4410186, at *2 (M.D. Fla. Oct. 4, 2017) (Merryday, C.J.) (abating the bad-faith claim "[b]ecause an allegation of bad-faith ripens into a justiciable action only after a determination of the insurer's liability"); *Gilbert v. State Farm Mut. Auto. Ins. Co.*, 95 F. Supp. 3d 1358, 1364 (M.D. Fla. 2015) (Conway, J.) ("Defendant argues that this claim must be dismissed because no actual controversy exists. The Court agrees with the authorities cited in Defendant's motion, as well as a majority of the courts which have recently addressed this issue." (cleaned up)); *Mobley v. Capitol Specialty Ins.*, 2013 WL 3794058, at *3 (S.D. Fla. July 19, 2013) (Moreno, C.J.) ("[U]ntil a determination of coverage is made in this case, any claim for bad faith, including a claim for enforcement of a claim above the policy limits, is premature. Because striking a pleading is a 'drastic' remedy, this Court finds that the claim for money in excess of policy limits should be abated until a determination of coverage under the policy is made.").

And the federal courts are not alone in doing so. Indeed, the Florida DCAs that have opined on this issue since *Blanchard* and *Vest* have consistently held that "an insurance bad faith claim must be raised in a separate cause of action and cannot be brought in an underlying tort action." *Harvey*, 109 So. 3d at 237; *see also GEICO Gen. Ins. Co. v. Martinez*, 240 So. 3d 43, 45 (Fla. 3d DCA 2018) ("Martinez concedes that her third-party bad-faith claim against GEICO has not yet accrued, and concedes that Martinez is not an insured under the terms of the liability insurance contract between Guevara, the insured and GEICO, the insurer. Nevertheless, Martinez argues that it was within the trial court's discretion to abate, rather than to dismiss, the premature bad-faith claim. We are unpersuaded by Martinez's arguments . . . . We accordingly grant the petition and quash the order denying the motion to dismiss Martinez's unaccrued third-party bad-faith claim against GEICO."); *Wright Ins. Agency, Inc. v. Nationwide Mut. Fire Ins. Co.*, 328 So. 3d 331, 334 (Fla. 2d DCA 2021) ("A

13

cause of action for third-party bad faith against an insured's liability carrier is not ripe until the third party obtains a judgment against the insured for an amount that exceeds the insured's policy limits."). We thus join Judge Gross, the Fourth DCA, and *the vast majority* of our federal colleagues in holding that, under Florida law, we must resolve a *Coblentz* plaintiff's breach-of-contract claim *before* we can adjudicate his bad-faith action.[5]

The only remaining question, then, is whether we should abate Count II or dismiss it. "The ultimate decision [on abating versus dismissing] is within the sound discretion of the trial court." *Terenzio*, 423 F. Supp. 3d at 1356. The Plaintiffs ask us not to prejudice them by dismissing the claim. But the Defendant has agreed, on the record in open court, *not* to seek dismissal of Count II—if and when it's brought—on statute-of-limitations grounds. And the law seems clear that, since the claim isn't ripe in any event, its statute of limitations hasn't yet begun to run. So, as we pointed out at the hearing, it isn't clear what prejudice the Plaintiffs would face from a dismissal—aside from the extra filing fee. On the other side of the ledger, there's something not altogether right about abating an unripe claim in federal court.[6] We, after all, are courts of limited jurisdiction.

---

[5] In their Response, the Plaintiffs don't *really* take issue with any of this. Instead, they mostly contend that the Defendant has failed to satisfy the rigorous standard for reconsideration set out in Rule 59(e). But, as we've said, under Rules 60 and 54, a district court *can* reconsider its prior decisions for "any other reason justifying relief from the operation of the judgment." *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1288 (11th Cir. 2000) (citing FED. R. CIV. P. 60(b)(6)). Since the prior Judge erred in denying the Defendant's motion to dismiss Count II, the Defendant has met its burden here.

[6] We say "in federal court" because the Florida Supreme Court has made clear that, under state law, a trial court has the discretion to abate the unripe claim. *See Fridman*, 185 So. 3d at 1229 ("[T]he trial court has authority to abate the statutory claims, rather than to dismiss them, if it appears to the court that abatement would be in the interest of judicial economy."). At the same time, of course, state courts aren't constrained by Article III's "Cases" or "Controversies" requirement. *See Hall v. Cooks*, 346 So. 3d 183, 191 (Fla. 1st DCA 2022), *reh'g denied* (Sept. 2, 2022) ("[A] Florida state court need not rotely apply *Lujan* and its progeny, as is required under article III of the federal constitution, because Florida has no case or controversy requirement. Instead, Florida has a different test for standing[.]"); *Casiano v. State*, 310 So. 3d 910, 914 (Fla. 2021) ("The 'decisions interpreting article III [ ] of the United States Constitution, which extends to the federal courts the 'judicial Power . . . to all Cases . . . [and] Controversies' enumerated therein, are not binding upon this Court[.]"); *Dep't of Revenue v. Kuhnlein*, 646 So. 2d 717, 720 (Fla. 1994), *as clarified* (Nov. 30, 1994) ("Unlike the federal courts, Florida's circuit

"Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Cowan v. Provident Life & Accident Ins. Co.*, 2018 WL 7577756, at *2 (S.D. Fla. Nov. 28, 2018) (Williams, J.) (quoting *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997)). "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (cleaned up). "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Digital Properties, Inc.*, 121 F.3d at 589; *see also Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005) ("Strict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes."). When in doubt, we should "favor[ ] the outcome that does not risk running afoul of Article III of the Constitution or the Federal Rules of Civil Procedure." *Terenzio*, 423 F. Supp. 3d at 1357. "And of course, timing is also important when it comes to Article III justiciability. File before the facts underpinning the claim have been sufficiently developed, and a court must dismiss the claim because it is not ripe for the court's review." *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1375 (11th Cir. 2019).

We thus agree with Judge Dalton that, because the bad-faith claim is "unripe," we should "dismiss it without prejudice rather than abate or stay the claim." *Babilla*, 2020 WL 6870610, at *1. And this appears to be the majority view in federal courts around our Circuit. *See, e.g.*, *Choi*, 2022 WL 1199645, at *2 ("To be sure, support for dismissal of a premature bad faith claim without prejudice, rather than abatement, is legion." (collecting cases)); *Poltar v. LM Gen. Ins. Co.*, 473 F. Supp. 3d 1341, 1347 (M.D. Fla. 2020) (Mendoza, J.) ("Plaintiffs' bad faith claim is not ripe, and this Court lacks

---

courts are tribunals of plenary jurisdiction [under] Art. V, § 5, Fla. Const. They have authority over any matter not expressly denied them by the constitution or applicable statutes.").

jurisdiction over it. Count II of the Complaint will be dismissed without prejudice for lack of subject matter jurisdiction.") (cleaned up)); *Dandeneau v. Hanover Ins. Co. o/b/o All my Sons Moving & Storage of W. Palm Beach, Inc.*, 476 F. Supp. 3d 1280, 1282–83 (S.D. Fla. 2020) (Singhal, J.) ("Under Florida law, the proper course of action for premature third-party claims is to dismiss without prejudice."); *Bele v. 21st Century Centennial Ins. Co.*, 126 F. Supp. 3d 1293, 1297 (M.D. Fla. 2015) (Byron, J.) ("[T]he determination of liability and the total amount of damages suffered in the underlying contract claim have not been determined. Thus, as it now stands, there is no actual and definite controversy as [t]he Declaratory Judgment Act does not permit a present attempt to quantify an amount of damages for a future bad faith claim because such a declaration does not resolve the entire controversy of whether bad faith occurred. Accordingly, Count III will be dismissed with prejudice." (cleaned up)); *Novak v. Safeco Ins. Co. of Ill.*, 94 F. Supp. 3d 1267, 1269 (M.D. Fla. 2015) (Mendoza, J.) (denying motion for leave to amend the complaint because the "Plaintiffs' bad faith claim is not yet ripe and the Court would be required to dismiss the claim without prejudice for want of subject-matter jurisdiction").

\*\*\*

Accordingly, after careful review—and with the benefit of oral argument—we hereby **ORDER and ADJUDGE** as follows:

1. The Defendant's Motion for Reconsideration [ECF No. 32] is **GRANTED**.

2. The prior Order Denying MTD [ECF No. 31] is **VACATED**.

3. The Defendant's MTD [ECF No. 9] is **GRANTED**. Count II of the Plaintiff's Complaint [ECF No. 1] is **DISMISSED without prejudice**.[7]

---

[7] The Defendant asks us to dismiss the bad-faith claim until "all three [*Coblentz*] elements have been finally decided, through final resolution in the appellate courts[.]" Motion at 2. We need not—and do not—resolve this question today. We hold only that, under Florida law, the Plaintiffs' bad-faith claim isn't ripe and that it won't become ripe until the insurer's liability has been established. Whether that liability can be established in *this* action—or whether, as the Defendant suggests, a determination of

**DONE AND ORDERED** in the Southern District of Florida on April 3, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

---

that liability must wait until the parties have fully exhausted *their appeals*—is a question we leave for another day.

# EXHIBIT 1

IN THE CIRCUIT COURT OF THE 16TH
JUDICIAL CIRCUIT IN AND FOR
MONROE COUNTY, FLORIDA

CASE NO. 91-20007 CA 18

INDEPENDENT FIRE INSURANCE COMPANY,

    Plaintiff,

vs.

JOSEPH PAULEKAS and MARSHA PAULEKAS,

    Defendants/Counter-Plaintiffs,

vs.

INDEPENDENT FIRE INSURANCE COMPANY,

    Counter-Defendant.

_____/

**VERDICT**

WE, THE JURY, find as follows:

1. Was the amount of the Final Consent Judgment entered February 22, 1991 reasonable?

    YES ✓          NO ____

If your answer to the above question is NO, then your verdict is for the plaintiff/counter-defendant, Independent Fire Insurance Company.

If your answer to the above questions is YES, then your verdict is for the claimants, Joseph Paulekas and Marsha Paulekas.

SO SAY WE ALL.

DATED at Plantation Key, Florida this 23 of December, 1992.

*Margaret Barkley*
FOREPERSON