UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-cv-20677-ALTMAN/Reid

**GUY LEWIS** *et al.*,

    *Plaintiffs*,

v.

**ALLIED WORLD SPECIALTY INSURANCE CO.**,

    *Defendant*.

_____/

## ORDER

The parties have filed cross-motions for summary judgment on a single question—whether the applicable insurance policy covers the Plaintiffs' claims. *See generally* Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' MSJ") [ECF No. 34]; Allied World's Cross Motion for Summary Judgment and Opposition to the Plaintiffs' Motion for Partial Summary Judgment ("Allied World's MSJ") [ECF No. 42].[1] Because we find that the insurance policy excluded from coverage the kinds of claims the Plaintiffs have advanced here, we now **GRANT** Allied World's MSJ and **DENY** the Plaintiffs' MSJ.

---

[1] Both motions are fully briefed. *See* Plaintiffs' Opposition to the Defendant's Cross-Motion for Partial Summary Judgment (the "Plaintiffs' Response") [ECF No. 51]; Allied World's Reply Brief in Support of Cross Motion for Summary Judgment ("Allied World's Reply") [ECF No. 56].

## THE FACTS[2]

On May 1, 2019, our Plaintiffs—Guy Lewis and Michael Tein—sued Jose M. Herrera (a lawyer) and the Herrera Law Firm, P.A., in state court, asserting claims of "civil conspiracy, aiding and abetting malicious prosecution, and abuse of process." Plaintiffs' Statement of Material Facts in Support of Motion for Partial Summary Judgment ("Plaintiffs' SOF") [ECF No. 35] ¶ 3; *see also* Allied World's Statement of Material Facts in Support of Cross Motion for Summary Judgment and Opposition to the Plaintiffs' Motion for Partial Summary Judgment ("Allied World's Response SOF") [ECF No. 43] ¶ 3 ("Undisputed.").[3] The Plaintiffs (also lawyers) had represented the Miccosukee Tribe between "2005" and "approximately 2009[.]" Allied World's SOF ¶ 10; *see also* Plaintiffs' Response to Defendant's Statement of Material Facts in Support of Cross-Motion for Summary Judgment ("Plaintiffs' Response SOF") [ECF No. 52] ¶ 10 ("Undisputed."). When the relationship between the Plaintiffs and the Tribe soured, "the Tribe"—represented by Herrera and his law firm—"filed numerous lawsuits against [the] Plaintiffs." Allied World's SOF ¶ 10; *see also* Plaintiffs' Response SOF ¶ 10 ("Undisputed."). In these lawsuits, Herrera lobbed "'frivolous and false' allegations of 'perjury and fraud on the court'" against the Plaintiffs and their firm, "Lewis Tein PL." Allied World's SOF ¶

---

[2] "The facts are described in the light most favorable to the non-moving party." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 (11th Cir. 2019); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]."). We accept these facts for summary-judgment purposes *only* and recognize that "[t]hey may not be the actual facts that could be established through live testimony at trial." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268, at *1 n.1 (N.D. Ala. Nov. 16, 2016); *see also Cox Adm'r US Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion may not be the actual facts. They are, however, the facts for present purposes[.]" (cleaned up)).
[3] Allied World includes *both* its response to the Plaintiffs' statement of material facts *and* its opening statement of material facts in one document. *See generally* Allied World's Response SOF [ECF No. 43]. To avoid confusion, we'll refer to the opening statement of material facts as "Allied World's SOF," and we'll call the response statement of material facts "Allied World's Response SOF."

11 (quoting Report of Referee [ECF No. 35-1] at 63); *see also* Plaintiffs' Response SOF ¶ 11 ("Undisputed.").

After the "Plaintiffs prevailed in the Tribe's lawsuits," Allied World's SOF ¶ 12; Plaintiffs' Response SOF ¶ 12 ("Undisputed."), the Plaintiffs sought redress in two ways. *First*, they "filed a [Florida Bar] complaint against Herrera . . . in July 2013," Allied World's SOF ¶ 13; Plaintiffs' Response SOF ¶ 13 ("Undisputed."), which led the Florida Bar to file an "official complaint against Herrera," Allied World's SOF ¶ 16; Plaintiffs' Response SOF ¶ 16 ("Undisputed."). And this is where our Defendant comes in: "[Allied World had] issued to Herrera a Lawyers Professional Liability Insurance Policy[.]" Plaintiffs' SOF ¶ 4; Allied World's Response SOF ¶ 4 ("Undisputed."); *see also* Allied World's Lawyers Professional Liability Insurance Policy (the "Policy") [ECF No. 35-3]. The Policy—subject to some exclusions—"provided Herrera with $1 million in coverage for Damages and Claim Expenses because of a Claim arising out of a Wrongful Act," Allied World's SOF ¶ 2 (cleaned up); Plaintiffs' SOF ¶ 2 ("Undisputed."), and "with Additional Coverage for Disciplinary Proceedings," Allied World's SOF ¶ 6; Plaintiffs' SOF ¶ 6 ("Undisputed.").

When our Defendant received notice of the Bar's disciplinary proceeding against Herrera, "Allied World accepted coverage for the Disciplinary Proceeding under [the Policy]," Allied World's SOF ¶ 15; Plaintiffs' Response SOF ¶ 15 ("Undisputed."), and "provided defense coverage to Herrera," Allied World's SOF ¶ 17; Plaintiffs' Response SOF ¶ 17 ("Undisputed."). In its response to Herrera, however, Allied World pointed to the Plaintiffs' allegations that Herrera had "advanced false claims against [the Plaintiffs] for personal financial gain, and that [Herrera] prosecuted and repeated these claims before four (4) separate trial judges and in the Florida Court of Appeals." Allied World's Response to Notice of Disciplinary Proceeding [ECF No. 43-4] at 2. Allied World also informed Herrera that, because the Plaintiffs were claiming that Herrera's "conduct was knowing, willful, intentional, and/or dishonest, . . . there [would be] no coverage for this matter to the extent that there

3

is a finding, admission or final adjudication of intentional acts or omissions by or at the direction of [Herrera] as provided [by the Policy's exclusions]." *Id.* at 5. Judge Dava Tunis, "who served as [the] Referee over the [disciplinary proceeding], issued her Report [of Referee] that Herrera knowingly and intentionally engaged in the complained of conduct." Allied World's SOF ¶ 18; Plaintiffs' Response SOF ¶ 18 ("Undisputed."); *see also* Report of Referee at 84 ("[T]he positions still espoused by [Herrera] were found to be wholly frivolous and without any legal merit. Lewis Tein were vindicated and each court found that all allegations against them were completely baseless and false."). "On July 17, 2019, the Florida Supreme Court approved Judge Tunis's findings of fact and recommendations as to guilt [and] approved [her] recommendation to disbar Herrera for a ten-year period." Allied World's SOF ¶ 19; Plaintiffs' Response SOF ¶ 19 ("Undisputed.").

*Second*, after Judge Tunis entered her findings and recommendations, the Plaintiffs sued Herrera "in Miami-Dade Circuit Court on July 20, 2018." Plaintiffs' SOF ¶ 1; *see also* Allied World's Response SOF ¶ 1 ("Undisputed."). In their original state-court complaint, the Plaintiffs "asserted claims for malicious prosecution[.]" Plaintiffs' SOF ¶ 2; *see also* Allied World's Response SOF ¶ 2 ("Undisputed."). Seeking to avail himself (for a second time) of the Policy's benefits, Herrera notified "Allied World of a pre-suit demand letter" he'd received *before* that original complaint was filed. *See* Plaintiffs' SOF ¶ 5; Allied World's Response SOF ¶ 5 ("Undisputed."). The Plaintiffs then amended their complaint twice. In their second amended complaint—and as relevant here—the Plaintiffs advanced "claims for civil conspiracy, aiding and abetting malicious prosecution, and abuse of process[.]" Plaintiffs' SOF ¶ 3; Allied World's Response SOF ¶ 3 ("Undisputed."). Again—and now for the third time—Herrera wrote Allied World and asked for coverage under the Policy. *See* Plaintiffs' SOF ¶ 7 ("After the [s]econd [a]mended [c]omplaint was filed . . . Herrera again notified Allied World."); Allied World's Response SOF ¶ 7 ("Undisputed.").

4

Citing Judge Tunis's findings, Allied World "denied [all three of] Herrera's request[s] for coverage"—the first in response to the notice of the pre-suit demand, the second in response to the notice of the original complaint, and finally in response to the notice of the second amended complaint. *See* Plaintiffs' SOF ¶¶ 5–7; Allied World's Response SOF ¶¶ 5–7 ("Undisputed."). Having thus failed to obtain coverage from Allied World, Herrera settled the Plaintiffs' claims for $22,097,987. *See* Plaintiffs' SOF ¶ 8; Allied World's Response SOF ¶ 8 ("Undisputed."). "As part of that settlement, the Plaintiffs agreed never to collect from Herrera, who then assigned to the Plaintiffs his right to sue his insurer, Allied World." Order Granting the Motion for Reconsideration [ECF No. 32] at 1.[4]

With that *Coblentz* agreement in hand, the Plaintiffs filed this lawsuit, advancing two claims against Allied World: a breach-of-contract claim (Count I) and a bad-faith claim (Count II)—both stemming from Allied World's alleged refusal (a) to defend Herrera in the underlying lawsuit and (b) to tender the policy limits (of $1,000,000). *See* Complaint [ECF No. 1] at 5–7.[5] This Order follows.

## THE LAW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

---

[4] This is what's commonly referred to as a *Coblentz* agreement. *Coblentz* agreements get their name from the Fifth Circuit's decision in *Coblentz v. Am. Sur. Co. of N.Y.*, 416 F.2d 1059 (5th Cir. 1969). *See Travelers Indem. Co. of Conn. v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1260 (11th Cir. 2021) ("When an insurance company wrongfully refuses to defend its insured, Florida law lets the insured settle the case himself in exchange for the plaintiff's promise to collect the settlement only from the insurance company. That type of settlement is called a '*Coblentz* agreement,' named for the Fifth Circuit case that first approved one.").

[5] On April 3, 2023, we granted Allied World's Motion for Reconsideration [ECF No. 32] and vacated the Court's Order Denying Allied World's Motion to Dismiss [ECF No. 31]. *See generally* Order Granting the Motion for Reconsideration [ECF No. 66]. In doing so, we found that the Plaintiffs' bad-faith claim (Count II) was unripe and dismissed it without prejudice.

An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See ibid.*

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion [ ] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with 'specific facts showing there is a genuine issue for trial.'" *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also Green v. Northport*, 599 F. App'x 894, 895 (11th Cir. 2015) ("The district court could consider the record as a whole to determine the undisputed facts on summary judgment."); *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record" (quoting FED. R. CIV. P. 56 advisory committee's note to 2010 amendment)). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

In sum, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, the Court must grant summary judgment if a party "has failed

to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Children & Families*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir.1994))).

## ANALYSIS

As we've said, the parties' dispute centers around one question—whether the Policy covers the Plaintiffs' claims. *See* Plaintiffs' MSJ at 14 ("Plaintiffs Lewis and Tein respectfully request that the Court grant partial summary judgment on the threshold elements of both their claims—specifically, the existence of insurance coverage and a wrongful denial of a defense to Herrera under that coverage by Allied World."); Allied Word's MSJ at 18 ("Allied World respectfully submits that the Court should deny Plaintiffs' Motion for Partial Summary Judgment and grant Allied World's Cross Motion for Summary Judgment on the issue of coverage.").

In Allied World's view, "[t]he [Policy] provided Herrera with $1 million in coverage for 'Damages' and 'Claim Expenses' because of a 'Claim' arising out of a 'Wrongful Act.'" Allied World's MSJ at 3–4 (quoting the Policy at 14). But, just a few pages later, "[the Policy] also expressly excluded certain conduct" from coverage. *Id.* at 5 (citing the Policy at 21). Since Herrera's conduct—the conduct the Plaintiffs are claiming coverage for here—fell squarely within the ambit of that exclusion, Allied World maintains that "[t]he Policy unambiguously bar[red] coverage." *Id.* at 9; *see also id.* at 10 ("This exclusion was triggered by Judge Tunis's findings that Herrera engaged in intentional, fraudulent, or dishonest acts, and coverage is therefore barred for [the] Plaintiffs' claims."). And this makes sense. *See Travelers Indem. Co. of Conn. v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1261 (11th Cir. 2021) ("But of course, because the lawsuit must be for something covered by the insurance policy, 'the

7

insurer has no duty to defend' when 'the pleadings show the applicability of a policy exclusion.'" (quoting *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35 (Fla. 4th DCA 2003))).[6]

"'Under Florida law, insurance contracts are construed according to their plain meaning.'" *State Farm Mut. Auto. Ins. Co. v. Baldassini*, 909 F. Supp. 2d 1363, 1366 (S.D. Fla. 2012) (Rosenbaum, J.), *aff'd*, 545 F. App'x 842 (11th Cir. 2013) (quoting *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291–92 (Fla. 2007)). "[A]n insurance policy should be read 'as a whole, endeavoring to give every provision its full meaning and operative effect.'" *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 32 F.4th 1347, 1356 (11th Cir. 2022) (quoting *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007)). Indeed, "when policy exclusions are unambiguous, courts *must* enforce them according to their plain meaning." *Westport Ins. Corp. v. Law Offices of Gerald J. Lindor, P.A.*, 2009 WL 722254, at *2 (S.D. Fla. Mar. 18, 2009) (Huck, J.) (citing *Deni Assocs. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1139 (Fla. 1998) (emphasis added)); *see also Travelers Indem. Co.*, 10 F.4th at 1264 ("When 'a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision.'" (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005))). And, since "[t]he words of a governing text are of paramount concern, what they convey, in their context, is what the text means." A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012).

We begin, therefore, with the words of the Policy. In describing the scope of available coverage, the Policy says:

**A. COVERAGE**

The Insurer will pay on behalf of an Insured, subject to the Limits of Liability shown in the Declarations, all amounts in excess of the Retention shown in the Declarations,

---

[6] Noting that the Policy covers intentional torts only "when insurable under the law pursuant to which this Policy shall be construed," Policy at 20, Allied World separately argues that the "described intentional conduct [in this case] is not insurable under Florida law," Allied World's MSJ at 11. That may be. But, given our finding that the Policy excluded the Plaintiffs' claims, we needn't (and won't) address Allied World's position that Herrera's intentional torts weren't insurable under Florida law.

> that an Insured becomes legally obligated to pay as Damages and Claim Expenses because of a Claim arising out of a Wrongful Act . . . that is first made during the Policy Period or any Extended Reporting Period.

Policy at 14. This language is clear and straightforward. Allied World agreed to pay, on Herrera's behalf, any "Damages and Claim Expenses" exceeding the Policy's Retention provision,[7] so long as Herrera "bec[ame] legally obligated to pay" those expenses (a) "because of a Claim arising out of a Wrongful Act" and (b) during the Policy Period (or any qualifying extension of that period). *Ibid.*

There's no dispute that Herrera's conduct occurred during the Policy Period. So, the only remaining question for us is whether Herrera was legally obligated to pay the Plaintiffs' damages "because of a Claim arising out of a Wrongful Act." *Ibid.* And, fortunately, the Policy defines those terms for us:

> **CLAIM** means:
> 1. any written notice or demand for monetary relief or Legal Services;
> 2. any civil proceeding in a court of law;
> 3. any administrative proceeding, other than a Disciplinary Proceeding; or
> 4. a request to toll or waive a statute of limitations;
>
> made to or against any Insured seeking to hold such Insured responsible for damages for a *Wrongful Act*.
>
> A Claim does not include criminal proceedings of any type, or any proceeding that seeks injunctive, declaratory, equitable or non-pecuniary relief or remedies of any type.

*Id.* at 17 (emphasis added). "**DAMAGES**" under the Policy means "the monetary portion of any judgment, award or settlement, including pre- and post- judgment interest." *Id.* at 18. And "**WRONGFUL ACT**" means:

> 1. an actual or alleged act, error or omission by an Insured, solely in the performance of or failure to perform Legal Services;
> 2. an actual or alleged Personal Injury committed by any Insured, solely in the performance of or failure to perform Legal Services; or
> 3. a Non-Profit Director and Officer Wrongful Act.

---

[7] It's not relevant to our case, but that retention limit is "$5,000 [for] each and every Claim." Policy at 2.

9

*Id.* at 20. The second kind of Wrongful Act—an "actual or alleged Personal Injury committed by any Insured, solely in the performance or failure to perform Legal Services"—is the one at issue here.

Again, the Policy helpfully defines the relevant terms. "**PERSONAL INJURY**," it says, "means libel, slander, violation of a right to privacy, false arrest, detention, imprisonment, wrongful entry, eviction, malicious prosecution or abuse of process, when insurable under the law pursuant to which this Policy shall be construed." *Ibid.* And "**LEGAL SERVICES**," it continues, "means those services performed on behalf of the Named Insured for others by an Insured as a licensed lawyer in good standing . . . or in any other fiduciary capacity, but only where such services were performed in the ordinary course of the Insured's activities as a lawyer." *Id.* at 19.

The parties agree that Herrera's conduct falls neatly into this initial definition of coverage because Herrera plainly engaged in a "Wrongful Act" under the Policy. *See* Plaintiffs' MSJ at 10 ("The [State Civil Action] brought claims based on two of those *covered* intentional torts—malicious prosecution and abuse of process—against Herrera." (emphasis added)); Allied World's MSJ at 11 ("Stated differently, the Policy *provided coverage* for alleged intentional, fraudulent, or dishonest acts, but then excluded coverage[.]" (emphasis added)). As we've hinted, however, the parties disagree about whether the Policy, having provided this initial band of coverage, then *excluded* the kinds of claims the Plaintiffs have brought here. For its view, Allied World points us to the Policy's Exclusion B, which says:

> B. This Policy *shall not apply* to any Claim or Disciplinary Proceeding based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, in whole or in part:
>
> 1. any intentional, criminal, fraudulent, malicious or dishonest act or omission by or at the direction of an Insured;
>
> provided, however, that this Exclusion shall not apply unless there has been a finding, admission, or final adjudication, in a proceeding constituting the Claim or in a proceeding separate from or collateral to the Claim.

Policy at 21 (emphasis added).

10

One important thing to note about this exclusion is that, while it excludes "intentional, criminal, fraudulent, malicious or dishonest" acts or omissions in *some* cases, it doesn't exclude them in *all* cases. By its own terms, in fact, it only excludes them when "there has been a finding, admission, or final adjudication, in a proceeding constituting the Claim or in a proceeding separate from or collateral to the Claim." *Ibid.* And this, as we'll explain in a minute, is where the Plaintiffs' principal contention unravels because (contra the Plaintiffs' position) this exclusion doesn't vitiate the Policy's coverage promise in *all* cases. It thus doesn't render the Policy's coverage provision illusory. Instead, as we've seen, the Policy covers, among other things, claims of malicious prosecution and abuse of process *unless* there's been "a finding, admission, or final adjudication"—in which case, as the Policy makes plain, claims of malicious prosecution (or abuse of process) are *not* covered.

It's true that the Policy doesn't explicitly spell out what constitutes "a finding, admission, or final adjudication." But the word "admission," in this context, can only mean one thing: an admission of *liability*. *See Admission*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/admission (last visited June 5, 2023) (defining admission as "the *granting* of an argument or position not fully proved: the act of *acknowledging* something asserted; *acknowledgment* that a fact or statement is true; [and] a revealing statement" (emphases added)). In the context of claims, accusations, and lawsuits, after all, the argument or position one is "granting"—the assertion, fact, or statement one is "acknowledging"—is the accusing party's claim itself. Indeed, in the context of claims, accusations, and lawsuits, it would make no sense for the accused party to "admit" that he is *not* liable. That's why, for instance, a criminal defendant "admits" his guilt at a change-of-plea hearing, *see, e.g.*, *Spriggs v. United States*, 2022 WL 2345758, at *7 (11th Cir. June 29, 2022), *cert. denied*, 143 S. Ct. 983 (2023) ("[I]n addition to constituting a waiver of certain constitutional rights, 'a guilty plea is an admission of all the elements of a formal criminal charge[.]'" (quoting *McCarthy v. United States*, 394 U.S. 459, 466 (1969))); *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) ("A guilty plea is an admission

11

of criminal conduct as well as the waiver of the right to trial."(citing *Brady v. United States*, 397 U.S. 742, 748 (1970) ("But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial[.]")), and (conversely) it's why settlement agreements so often make clear that the settling defendant does *not* "admit" liability, *see, e.g.*, *In re Home Depot Inc.*, 931 F.3d 1065, 1087 n.21 (11th Cir. 2019) ("It would be a contradiction in terms to identify one side as the prevailing party in a settlement, especially when, as here, the defendant does not admit to liability."); *Robinson v. Kimbrough*, 652 F.2d 458, 465 n.9 (5th Cir. Aug. 3, 1981) ("The fact that defendants in the instant case have never expressly admitted liability is of little consequence since *defendants rarely admit responsibility* in suits terminated by consent judgments or voluntary action." (emphasis added)).[8] And—absent strong evidence to the contrary—we generally construe the words of a contract in accordance with their plain and ordinary meaning. *See* SCALIA & GARNER at 69 ("Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense."); *see also GEICO Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1143 (11th Cir. 2019) ("Florida gives words in an insurance contract their ordinary meaning, which requires reading the words in context."). When the Policy's Exclusion B talks about an "admission," in other words, it *must* be referring to an admission *of liability*.

Having thus defined the word admission as it appears in the exclusion, we can easily construe the rest of this part of the exclusion. That's because, under one of our better-established contextual canons (*noscitur a sociis*), "[a]ssociated words bear on one another's meaning." SCALIA & GARNER at 195. And, given the unambiguous meaning of the word admission in this context, the associated words—"finding" or "final adjudication"—must likewise mean a finding or final adjudication of *liability*. So, while the Policy provides coverage for claims of malicious prosecution or abuse of process,

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

it *doesn't* require the insurer to indemnify Herrera when there has been a "finding, admission, or final adjudication" *of liability*.

Our central question, then, is whether Judge Tunis's *findings* about Herrera's conduct triggered this Policy exclusion. *See* Allied World's MSJ at 11 ("Allied World did not deny coverage because the Underlying Action *alleged* uninsurable intentional conduct. Rather, Allied World provided coverage until there was a *finding* by Judge Tunis that Herrera engaged in intentional, fraudulent, or dishonest acts." (emphases in original)). And we agree with Allied World here: Judge Tunis *did* find that, in advancing the Tribe's claims against the Plaintiffs, Herrera acted in an "intentional, criminal, fraudulent, malicious or dishonest" manner. Policy at 21. Here's how Judge Tunis laid out her findings:

> In conclusion, after over six years of litigation in three distinct, state and federal trial courts, and through all appellate review, the positions still espoused by [Herrera] were found to be wholly frivolous and without any legal merit. [The Plaintiffs] were vindicated and each court found that all allegations against them were completely baseless and false. Furthermore, they were successful in their motions for sanctions against the Tribe. Still, the damage had been done; the actions taken by Herrera . . . devasted [the Plaintiffs], both professionally and personally.
>
> In spite of record evidence throughout the pendency of the disciplinary proceedings, including the sanction hearing, [Herrera] continued to espouse positions in contravention of all previous court rulings. The evidence available shows he did so in a knowing and intentional manner with utter disregard for the consequence of his conduct to all of the parties: Mr. Lewis, Mr. Tein, . . . . Thus, this applies not only to [Herrera's] conduct but shows his inability or unwillingness to recognize the consequences of his actions. . . .
>
> This case does not present an isolated incident of misconduct. Thus, of extraordinary importance are [Herrera's] repeated actions, over a period of years, up to and including the disciplinary and sanction hearings.

Report of Referee at 84–86; *see also id.* at 87 ("[Herrera] assisted [the Tribe] behind the scenes in presenting the frivolous and false allegations [against the Plaintiffs] of 'perjury and fraud on the court' in the Dresnick proceedings, as well as the 'fake loan' scheme pursued by the Tribe in the Thornton case."); *id.* at 89–90 ("In asserting 'fake loans' [Herrera] states that there are no specific deductions

13

entitled 'attorney's fees' . . . . This assertion omits pertinent information and thereby misled the underlying courts . . . . [Herrera] knew these pertinent facts which he omitted.").

The Plaintiffs, for their part, don't dispute Allied World's characterization of the nature of Judge Tunis's findings. *See* Allied World's SOF ¶ 18 ("On March 28, 2018, Judge Dava Tunis, who served as Referee over the proceedings, issued her Report *finding that Herrera knowingly and intentionally engaged in the complained of conduct*." (emphasis added)); *see also* Plaintiffs' Response SOF ¶ 18 ("Undisputed.").[9] Nor do they suggest that her findings *didn't* trigger Exclusion B. *See generally* Plaintiffs' MSJ; Plaintiffs' Response.[10]

Instead, they insist that the Exclusion is unenforceable for two interrelated reasons—both unavailing. *First*, they say (in an argument whose demise we've foreshadowed) that "Florida law squarely prohibits an insurance policy from granting coverage in one paragraph and excluding precisely that same coverage in another." Plaintiffs' MSJ at 10. *Second*, they contend (in an argument derived

---

[9] Nor could the Plaintiffs have argued otherwise since they themselves relied on Judge Tunis's findings in their State Civil Action against Herrera. *See* State Civil Action Complaint [ECF No. 35-2] ¶ 62 ("After a 5-day evidentiary hearing in 2017, Florida Supreme Court Referee, Circuit Court Judge Dava Tunis, found Herrera guilty of numerous violations of the Rules Regulating the Florida Bar by clear and convincing evidence. In an 82-page Report of Referee, Judge Tunis made extensive factual findings that Herrera took actions . . . to damage Lewis Tein."); *id.* ¶ 71 ("The abuse of process directed at Lewis Tein included: (a) 'collusion between [Herrera] and Roman to manipulate Bert and effect his withdrawal of Lewis Tein's § 57.105 motion . . .;' (d) improper filings against Lewis Tein's counsel (Paul Calli) that 'only served to disparage, humiliate, and cause personal distress . . .;' (f) intentionally thwarting discovery of the sworn statement by his client (Bert) that exonerated Lewis Tein by 'repeatedly providing evasive and false testimony about its existence at [Herrera's] April 2013 deposition[.]'" (quoting Report of Referee at 14, 44, 56)); *see also id.* ¶ 82 (listing Judge Tunis's findings as support for the Plaintiffs' allegations that "Herrera substantially assisted Roman and the Tribe in the malicious prosecution").

[10] They've thus forfeited any such arguments. *See, e.g.*, *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived."); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) ("A party cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions.").

from the first) that the exclusion renders the Policy "internally contradictory and ambiguous" because, "[o]n the one hand, the Policy says the insurer 'will pay' for Damages the insured 'becomes legally obligated to pay' as a result of Claims that specifically include malicious prosecution or abuse of process," while, "on the other hand, the Policy simultaneously says it will not pay any Damages if there has been a finding that the Insured engaged in a malicious prosecution or abuse of process (and thus becomes legally obligated to pay Damages)." Plaintiffs' Response at 10–11 (citing Policy at 14). Both arguments rely on the Plaintiffs' view that the Policy is illusory because its Exclusion B swallows up *all* of its available coverage. Here, as we've suggested, the Plaintiffs are mistaken.

To understand why, it may be helpful to think of two concentric circles: the first (which we'll call the Coverage Circle) includes everything the Policy covers; the second (the Exclusion Circle) contains all the things the Policy excludes. For the Plaintiffs to prevail here, the circumference of the Exclusion Circle must *equal or exceed* the circumference of the Coverage Circle. In other words, "an insurance policy can both provide coverage and also exclude some things that might otherwise fall within that coverage. That's not a conflict. It's just an exclusion." *Travelers Indem. Co.*, 10 F.4th at 1265. "Coverage is illusory under Florida law *only if* the insurance policy grants coverage with one hand and then with the other *completely takes away the entirety* of that same coverage. *Completeness is key.*" *Ibid.* (emphases added). "[T]here is," then, "a dispositive difference between *complete* contradiction or *complete* negation and merely excepting some or many or *even most* things from coverage. Coverage is not illusory if the policy 'simply excludes coverage for a subset of claims that would ordinarily fall within the policy's insuring provisions.'" *Id.* at 1266 (quoting *Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1352 (11th Cir. 2017) (emphases added)). So, an exclusion that only "takes a nibble, or even a big bite, out of" coverage isn't enough to render a policy illusory because an "[e]xclusion can be significant without completely contradicting the insuring provisions." *Ibid.* (citing

15

*Warwick Corp. v. Turetsky*, 227 So. 3d 621, 626 (Fla. 4th DCA 2017 (cleaned up)). As our Circuit has explained:

> The difference [between illusory and non-illusory policies] can be illustrated with examples. An insurance policy that purports to cover certain intentional torts, but excludes intended acts is illusory. So is a policy that states it covers parasailing but excludes watercrafts. In those situations, the category of coverage is smaller than the category of exclusion; it's impossible to do the covered activity without also doing the excluded activity.
>
> On the other hand, a policy is not illusory if it covers advertising injury but excludes advertising injury arising out of a violation of any statute, ordinance or regulation; that's just a coverage provision with an exception, even if the exception is a significant one. A policy also is not illusory when it excludes all claims for incidents arising out of conduct occurring before a certain date, such as barring coverage for losses arising out of bank officers' pre-November 2008 conduct, even when those are the very claims most likely to be made. In those situations, the category of coverage is bigger than the category of exclusion; it is possible to do the covered activity without also doing the excluded activity.

*Travelers Indem. Co.*, 10 F.4th at 1266 (cleaned up).

And that's all the Plaintiffs' cases say—that an insurance policy is illusory (and thus unenforceable) *only* when its "limitations or exclusions *completely contradict* insuring provisions[.]" *Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997) (emphasis added); *see also Tire Kingdom, Inc. v. First S. Ins. Co.*, 573 So. 2d 885, 887 (Fla. 3d DCA 1990) ("The policy in this case attempts to provide coverage for certain advertising activities and then exclude *those same activities*." (emphasis added)); *Lincoln Nat'l Health & Cas. Ins. Co. v. Brown*, 782 F. Supp. 110, 113 (M.D. Ga. 1992) ("Therefore, the court finds that this policy contains two conflicting provisions." (cleaned up)); *Lineberry v. State Farm Fire & Cas. Co.*, 885 F. Supp. 1095, 1099 (M.D. Tenn. 1995) ("In the instant case, the umbrella policy expressly covered injuries resulting from invasion of the right of privacy, an inherently intentional tort, but excluded injuries which were intended or expected. Therefore, the Court finds the coverage is illusory, and the policy is ambiguous and must be interpreted against the insurer and in favor of the insured.").

16

Which brings us back to our case—where the Coverage Circle is, as we're about to see, necessarily larger than the Exclusion Circle in all the ways that matter here. As we've said, the Coverage Circle includes, among many other things, malicious-prosecution or abuse-of-process claims for which Herrera was "legally obligated to pay . . . Damages[.]" Policy at 14. And (the Coverage provision goes on) these "Damages" might arise in one of three scenarios: where there's been a "judgment," an "award," or a "settlement." *Id.* at 18. The Exclusion Circle, by contrast, includes *only* those cases in which the veracity of a malicious-prosecution or abuse-of-process claim has been affirmed, as it were, in "a finding, admission, or final adjudication[.]" *Id.* at 21. Looking at these two clauses together, the careful observer will quickly notice a scenario that *both* falls into the Coverage provision *and* yet fails to trigger the Exclusion. That scenario, of course, is one in which Herrera settles a malicious-prosecution or abuse-of-process claim—thus legally obligating him to pay Damages—*without* admitting liability. In this scenario, Herrera would be legally obligated to pay "the monetary portion of any . . . settlement," Policy at 18—*i.e.*, "Damages"—*without* a concomitant "finding, admission, or final adjudication" of any kind, *id.* at 21.[11] Since the Coverage Circle is thus larger than the Exclusion

---

[11] The Plaintiffs make much of the Coverage provision's "legally obligated to pay" limitation. As they see it, the Policy *is* illusory because an insured (like Herrera) can *only* be "legally obligated to pay" Damages (Coverage Circle) if there's been a finding, admission, or final adjudication (Exclusion Circle). *See* Plaintiffs' Response at 10 ("On the one hand, the Policy says the insurer 'will pay' for Damages the insured 'becomes legally obligated to pay[.]' But on the other hand, the Policy simultaneously says it will not pay any Damages if there has been a finding that the Insured engaged in a malicious prosecution or abuse of process (and thus becomes legally obligated to pay Damages)."). If this were true, the Plaintiffs would be right because the Coverage and Exclusion Circles would be coextensive. But it *isn't* true—principally because the law allows defendants to settle claims without *any* finding, admission, or final adjudication of liability. *See, e.g.*, *In re Home Depot Inc.*, 931 F.3d at 1087 n.21 ("It would be a contradiction in terms to identify one side as the prevailing party in a settlement, especially when, as here, the defendant does not admit to liability."); *Robinson*, 652 F.2d at 465 n.9 ("The fact that defendants in the instant case have never expressly admitted liability is of little consequence since *defendants rarely admit responsibility* in suits terminated by consent judgments or voluntary action." (emphasis added)). And, indeed, that's exactly what Herrera did here—settle the Plaintiffs' claims *without* admitting liability. *See* Final Consent Judgment at 2–3 (not admitting liability). The point, in any case, is that settlements—with or without admissions of liability—*do* trigger a legal obligation to pay. *See Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1290 (11th Cir. 2004) ("[A] settlement agreement is essentially a contract and is subject to the traditional rules of contract

17

Circle—*i.e.*, it covers situations the Exclusion Circle does not exclude—the Policy isn't illusory. *See, e.g.*, *Travelers Indem. Co.*, 10 F.4th at 1265 ("Coverage is illusory under Florida law *only if* the insurance policy grants coverage with one hand and then with the other *completely takes away the entirety* of that same coverage. *Completeness is key.*" (emphases added)); *see also id.* at 1266 ("[T]here is a dispositive difference between *complete* contradiction or *complete* negation and merely excepting some or many or *even most* things from coverage. Coverage is not illusory if the policy 'simply excludes coverage for a subset of claims that would ordinarily fall within the policy's insuring provisions.'" (quoting *Zucker*, 856 F.3d at 1352 (emphases added)).

Our Policy thus covers the relatively straightforward and not (we think) uncommon scenario in which an insured settles a malicious-prosecution or abuse-of-process claim *without* any finding, admission, or final judgment of liability.[12] And it excludes only a subset of those settlements—namely, those in which there's been a finding, admission, or final judgment of liability.

\* \* \*

Because the Policy excluded the Plaintiffs' claims—and given our conclusion that the exclusion didn't render the Policy illusory—we hereby **ORDER AND ADJUDGE** that Allied World's MSJ [ECF No. 42] is **GRANTED**, and the Plaintiffs' MSJ [ECF No. 34] is **DENIED**.

---

interpretation."); *Monahan v. C.I.R.*, 321 F.3d 1063, 1068 (11th Cir. 2003) ("Principles governing general contract law apply to interpret settlement agreements."); *see also Meeks v. Newcomb*, 822 F. App'x 865, 867 (11th Cir. 2020) (reversing district court's denial of the plaintiff's motion to enforce a settlement agreement because "it plainly [bound]" both defendants "to ensure payment of $100,000. [The Defendant] Newcomb cannot escape that result now that his co-obligor has declared bankruptcy. Because the terms of the settlement agreement are unambiguous, the district court was required to enforce the agreement as written.").

[12] For what it's worth, we would've found the Policy enforceable *even if* it had provided coverage only in "extraordinary circumstances that are unlikely to occur." *See Travelers Indem. Co.*, 10 F.4th at 1266 ("Exclusions do not render coverage illusory even if they make the coverage depend on extraordinary circumstances that are unlikely to occur. Because the Policy allows for these possibilities, no contradiction exists." (cleaned up)).

18

Pursuant to Rule 58, we'll enter final judgment separately. The Clerk of Court shall **CLOSE** this case and **DENY** all other pending motions as moot.

**DONE AND ORDERED** in the Southern District of Florida on June 6, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record